Roy Englert on behalf of Wilshire Courtyard and its partners, and may it please the Court, I'd like to reserve six minutes of my 20 for rebuttal, please. Would you please speak up? Yes, Your Honor. I have a scratchy throat. I apologize. Do you have water there? I do. Thank you, Your Honor. Section 346J1 of the Bankruptcy Code, as applicable for the tax years in question in this case, was one sentence long. I will read the entire section. Except as otherwise provided in this subsection, income is not realized by the estate, the debtor, or a successor to the debtor, by reason of forgiveness or discharge of indebtedness in a case under this title. That statute means what it says. And Section 346A, which is also one sentence long, makes it preemptive of any contrary state tax law rule. Let me just ask, counsel, if the Court ruled that it was a forced sale, Section 346 would not apply. Isn't that correct? I'm sorry, Your Honor. I didn't understand the question. If the Court ruled that it was not a cancellation of debt income but was rather a forced sale, would Section 346 apply? Doesn't that mean cases arising under State law, not Title XI?  Thank you, Your Honor, for the question. I now understand it. If the Bankruptcy Court were to rule that it was not a sale, I'm sorry, that it was a sale and not a forgiveness or discharge of indebtedness, then 346J1 would not apply. That would be a merits determination, not a jurisdictional determination. But that determination is for the Bankruptcy Court to make, not for a State court to make. And Your Honor's question also goes to the State court. Couldn't the State court make it? Absolutely not. That's what 346A and 346J1 and 1334B say. Because let me bring 1334B into the analysis. 1334B of Title 28 is the jurisdictional provision governing bankruptcy cases. And any case arising under, arising in, or related to a case under this title is within the jurisdiction of the Bankruptcy Courts. A case arises under Title 11 if it is governed by a section of the Bankruptcy Code. That's not in dispute. Section 346J1 governs this case. It does raise the question, was it a sale or was it a forgiveness of discharge or indebtedness? The term cancellation of indebtedness income really doesn't need to be used. But it does raise the question in its own terms, was this a forgiveness or discharge of indebtedness? And that question is to be answered by the Bankruptcy Court. So this plan has long ago been realized and implemented and carried out, correct? Correct, Judge Pius. All right. So we're years down the line. So from my perspective, I mean, I read carefully your arguments about jurisdiction as you started off with the rising under and a rising in. But in the context of this case, I don't find that too persuasive. But your argument that there might be related to jurisdiction after the confirmation of the plan might get you to home base. Well, Your Honor, I really think this isn't a rising under case. I'm disappointed to hear you don't find that persuasive. It's much simpler. This is not a complicated matter. Section 346J1 and Section 346A govern. That's all it takes for a rising under. Whether we win or lose under 346 is a different question. But those sections govern. That's all it takes for a rising under. It's that simple. It really is. Now, it's also related to, under the Travelers case from the Supreme Court, under the Sasson case from this court, which I realize Your Honor joined in, the related to jurisdiction is very broad. Under Pegasus Holdings, under Travelers, again, post-confirmation jurisdiction is very broad. The bankruptcy court in this case, Judge Bufford, was enforcing his own determination that this was not a sale. And that's a determination he made in the order confirming the plan. He was enforcing that under Section 346, which is self-executing, as held by the Fourth Circuit in the Antonelli case. He certainly has jurisdiction. Now, there was a power in the bankruptcy code under Section 350B to reopen a closed case. Wilshire Courtyard, not Wilshire Courtyard LLC, Wilshire Courtyard invoked that authority to reopen this case, asked him to enforce his prior determination that it is not a sale, to apply 346A and 346J1. And that's what he did. And somehow the BAP reversed. May I ask a question about that? We're still on a rising under, because I'm more interested in the related to myself. Why should you be able to attack a plan post-confirmation, which years afterwards the plan has been in place, and I found no Ninth Circuit case on this. There are out-of-circuit cases that say you should not bring it post-confirmation. It's the Franchise Tax Board that's attacking the plan, Your Honor. It's the Franchise Tax Board that wants to recharacterize this transaction as a sale, even though the plan says it is not a sale. What we're doing is going to the court that entered the order saying it's not a sale and asking that court to enforce its own order. So this is the polar opposite of an attack on the plan. There should not be an attack on the plan should not be allowed. That is a factor that cuts against the Franchise Tax Board's position, not against our position. And the reason there should be post-confirmation authority is really, again, very, very simple. It's the reason the Supreme Court said in the Trappler's case a court always has jurisdiction to enforce its own orders and to prevent collateral attacks on them. It doesn't make any sense to adjudicate in State court the question of Federal law, whether under Section 346J1 this is a forgiveness for discharge of indebtedness. It just doesn't make any sense to say that the State court gets to look at that. There was one provision in the plan that kind of struck me as a little odd. When it came to the general partners, it said, you know, you should consult your own I forget the exact language of the clause. You know, go consult your own lawyer to assess the State tax ramifications of this aspect of the plan. Yes, Judge Pines. Lawyers always put things like that in. They say go consult somebody else. Don't rely on us. But the partnership tax law here is, again, not that complicated. I understand. Partnerships are passed through entities under both Federal law and California law. And so unless there is income realized at the partnership level, there's nothing to pass through to the partners. 346J1 says in so many words, income is not realized by the estate, the debtor, or a successor to the debtor. So the partnership, Wilshire Courtyard, didn't realize income. That's what Congress said in the clearest possible language in the applicable version of 346J1. There's nothing to pass through to the partners. And there's some confusion about whether there was cancellation of indebtedness income that then got passed through but isn't taxable. That's really not the right way to look at it. The right way to look at it is really simple. No income was realized. That's the words of the statute. Since no income was realized and partnerships are passed through entities, there was nothing for the partners to declare on their tax returns. And the California Franchise Tax Board, in auditing the partnership and then assessing notices of deficiency against the partners, was acting in direct violation of Federal law, which should be enforced by a Federal court. Now, the California Franchise Tax Board has raised a number of alternative grounds for affirmance, some of which Your Honors have already brought up. And I'm glad they did because it's good to get those out of the way at this level, at the Ninth Circuit level, if we possibly can. The California Franchise Tax Board is wrong on every one of those arguments. Let me start with standing. Well, wait. Before you do that, the BAP didn't address any of these issues. Once they decided they didn't have the bankruptcy court didn't have jurisdiction, they said case over. Correct? Correct. So if we disagree with their determination, conclude that jurisdiction is in the bankruptcy court. Your Honor, like any lawyer, I'll take a reversal. But I really would invite you to address the alternative grounds for affirmance raised by the appellee. First of all, they're within their rights to raise alternative grounds for affirmance. But second, this is the machinery of the State of California against some individual taxpayers. Well, these just aren't any little taxpayers. They're not little taxpayers, but they are individual taxpayers. Pretty substantial taxpayers. Agreed, Your Honor. Not arguing otherwise. Very sophisticated. In fact, they're very sophisticated taxpayers. I'm not arguing otherwise, Your Honor. But it is a case that has dragged on. This is its third level of court. And if it goes back for another remand and another appeal, when the issues really are quite easy to resolve, I would respectfully submit, that's not necessarily in the interests of justice or the parties. Now, if I may, on standing. It is Wilshire Courtyard, the partnership, not the LLC, that was audited by the California Franchise Tax Board. And the Franchise Tax Board was right to audit the partnership, not the LLC, because under California law, the partnership continues to exist for many purposes, including winding up its affairs or suing and being sued. It was the partnership, not the LLC, that invoked the authority of 11 U.S.C. Section 350B to reopen this case. But didn't they do that on behalf of the individual partner? In a non-technical sense, that's true. The actual procedural history is Wilshire Courtyard was the only party. And Judge Buffard said, why don't you join the individual partners under Rule 7019? There was some litigation over that, but ultimately they were joined. And it is, because partnerships are passed through entities, there's always a sense in which a partnership, any time it litigates a tax issue, federal, state, doesn't matter, any time a partnership litigates a tax issue, it's doing so in a sense on behalf of its partners, because it's the partners who do or don't pay tax as a result of the determinations at the partnership level. But that's, of course, exactly the point on standing. Pass-through entities have standing. There's a Supreme Court case on point. As luck would have it, it's a case I argued in the Supreme Court. It's called Sprint v. APCC. It was decided in 2008. And the specific holding is that pass-through entities have standing. Why is it important for pass-through entities to have standing? Not so much because of the actual facts of Sprint v. APCC, but because of partnership tax law. Partnerships are pass-through entities. Law firms are partnerships that are pass-through entities. There are lots of real estate partnerships. They have standing. Given that the Wilshire Courtyard, the partnership, has standing, it doesn't matter whether the partners also have standing, but as a constitutional matter, their stake is conceded. So the only question is the statutory question, whether their status as non-debtors deprives them of standing. But 11 U.S.C. Section 1109B answers that question. Any party in interest has standing to raise any issues. And this Court has a case on point called Thornton Salation, which is cited in our reply brief. And there's yet another statute that would give them standing, even if I'm wrong about all of that, which is 28 U.S.C. Section 1367, which gives supplemental jurisdiction. Now let me talk just for a moment about the meaning of Section 346. It means what it says. It was amended in 2005 to be in alignment with Section 108 of the Internal Revenue Code, but that amendment was not retroactive. Congress said this applies to tax years going forward. So the California Franchise Tax Board's argument in its brief that you have to construe Section 346 as applicable in 1997 in pari materia with Section 108 of the Internal Revenue Code just doesn't work. There was a time when Congress said you have to do that, but that's for tax years 2005 and later, not for the tax years in question here. Next argument, sovereign immunity. The Supreme Court disposed of that argument in the Katz case. 106A purports to waive sovereign immunity for Section 346 and Section 1146, among others, but also Justice O'Connor's opinion to the court in Katz said the plan of the Constitutional Convention was that the states agreed not to invoke sovereign immunity when they agreed to Article I, Section 8, Clause 4, the clause providing for uniform laws of bankruptcies. By means of Supreme Court precedent, easy issue. Next issue, Tax Injunction Act. There's a case called ELETT, E-L-L-E-T-T, from this court cited in the briefs. The California Franchise Tax Board lost that case. The holding of the case is that the Tax Injunction Act does not apply when a bankruptcy code provision specifically targets state taxes. That case involves Section 505 of the code, which specifically targets state taxes. This case involves Section 346. Subparagraph A, one sentence long, says, except the extent otherwise provided, subsections blah, blah, blah, and J, apply notwithstanding any state or local law imposing a tax, but subject to the Internal Revenue Code of 1986. So you have a statute that's within the Tax Injunction Act as construed. You have a statute that is applicable notwithstanding the Tax Injunction Act as construed in ELETT. There's also an opinion by Judge, then-Judge Alito, Hechinger, says the same thing. Having tried to reserve six minutes for rebuttal, I'm going to stop there and see you later on rebuttal. Thank you. That's fine. I'd like to ask a question. Oh, yes, Judge Nelson. What effect would adverse tax consequences have on the debtor? The effect they would have on the debtor is the debtor would have to pass through the debtor's income to the partners, and they would have to pay $13 million in back taxes. There are notices of assessment in the record. So what happened here is you're assuming the partners are the debtor? No, not at all, Your Honor. Quite the contrary. The debtor is the partnership. My question was, assuming there is an adverse tax ruling here on the debtor, what effect would it have on the debtor? On the debtor. Debtor. The debtor has to file a K-1, or the California equivalent of a K-1, that says we didn't we have to effectively, not these precise steps, but effectively the debtor has to do the equivalent of filing an amended K-1 saying we were wrong, we didn't report a whole bunch of income, and then it has to pass through that income to the partners. Well, what do you do with N. Ray Ray? Ray is not contradictory to anything I'm saying here at all today because it's about related to jurisdiction when there isn't a directly applicable bankruptcy code provision like Section 346. Now, I really do submit this is a rising under case, not a related to case, and Ray is a related to Section 346A, and we have the language that is dispositive on the merits as long as we have a finding of forgiveness or discharge of indebtedness in 346J1. Thank you. Thank you. Good morning. Bonnie Holcomb from the California Attorney General's Office representing the California Franchise Tax Board. We need to keep in mind at all times that this case involves the question of the jurisdiction of the bankruptcy court, not a resolution of any of the underlying tax issues. But there was a significant number of issues raised in the briefs to the BAP, correct? Correct. And then all the BAP decided was this jurisdictional point. That's correct. Once they said we don't have jurisdiction, the bankruptcy court didn't have jurisdiction here, they just closed up shop and terminated the case, right? So is it your point you're making is that those other issues should go back to the BAP? If it was reversed, if this case was reversed. On the jurisdictional point. Yes. Yes, Your Honor. But what I was referring to was the state tax issues should not be, that is not before the court today with respect to the resolution of the tax dispute. We're only focusing on jurisdiction of the bankruptcy court. That is the issue that's before the court, not the resolution of the tax question. This case involves the question of whether the bankruptcy court has post-confirmation jurisdiction over the state tax dispute between the California Franchise Tax Board and the Wilshire Partners. It concerns the state tax dispute of the partners of the debtor partnership, Wilshire Courtyard, which was in bankruptcy from 1997 to 1998. The bankruptcy appellate panel consisting of three bankruptcy court judges correctly decided and held that the bankruptcy court had no jurisdiction over the state tax dispute of the Wilshire Partners and the Franchise Tax Board. And since Franchise Tax Board is a state agency with 11th Amendment sovereign immunity, there is the additional issue of whether there has been an unconstitutional expansion of bankruptcy court jurisdiction that exceeds the power of Congress under the bankruptcy clause. Bankruptcy court is limited, excuse me, by statute to bankruptcy cases and those case civil proceedings arising under, in, and related to Title 11, the bankruptcy code. Why isn't this related? Because, as Your Honor asked opposing counsel a moment ago, the outcome of the tax dispute will have no impact on the debtor or the plan. The plan has been fully consummated. The bankruptcy case is closed. And again, that tax dispute has no impact on the fully consummated plan, which is long ago, completed, and over with. The case is closed. So it has no impact on that. If you really overlap any issues here, you argue that it's purely a matter of state law. Well, if you argue that 346 does not apply to the general partners, only to the partnership itself, but the partnership income is only taxable through the general partners themselves, doesn't your reading render Section 346 a nullity in the partnership context? Again, we're not looking at income tax law or any other rules. We're looking at the rules of jurisdiction to determine if the bankruptcy court had jurisdiction over the tax dispute. And under the Board's position is that the Wilshire partners have no right to relief under Section 346 or 1146. And the reason is that you just put, well, they claim it was a disguised sale. Right? Is that right? The Board, the Franchise Tax Board, yes. But nevertheless, we're not here to resolve the final. But I don't understand. As Judge Nelson said, it does seem to overlap with bankruptcy law determinations. I don't understand why the partnership couldn't go back to the bankruptcy court and say, hey, there's a dispute that's arisen over how this plan is to be interpreted. And you approved it, Mr. Bankruptcy Court, or Bankruptcy Court, you approved this. And here's our understanding of how, what this plan did. And we want your we want you to either agree with us or disagree with us on how we're interpreting the plan. The need for plan interpretation only affects the Wilshire partners who are non-debtors. It has no effect on the plan or the debtor. The debtor doesn't even exist, although it has a right to a V-suit. But it doesn't exist. It has no economic interest in this matter because it has nothing. But everything passes through the partnership to the. Again, we're not looking at income tax law. We're looking at the laws of jurisdiction. But they seem to be related to me. Well, if you keep focused on what the question is before us, as opposed to going into tax rules and so forth, the tax rules are not governing the laws of jurisdiction in this case. And with respect to arising under jurisdiction, the statute only, let's, opposing counsel Reggie, the statute, I'd like to read it again. Section 346J1 provides that income is not realized by the estate, debtor, or successor to the debtor by reason of forgiveness or discharge of indebtedness in a case under Title 11. By its terms and plain language, Section 346 only applies to the estate, the debtor, or successor to the debtor. Under the rules of statutory construction, it's well settled that federal statutes that seek to exempt income from state taxes should be narrowly construed and only allowed when Congress's intent is clear. Here it is not clear that Congress intended to expand the application of Section 346 to non-debtors. The statute means what it says. And under the Ninth Circuit case of third dividend, the term debtor means only the debtor and not those whom themselves have not filed for bankruptcy. And under the Ninth Circuit case of American principles, the phrase estate, debtor, or successor to the debtor means that the bankruptcy court has no jurisdiction over  So putting all these rules together, it is crystal clear that Congress expressly limited the application of Section 346 to the debtor, the estate, or successor and not to non-debtors. So is it your argument that that means that there's no related to jurisdiction or not arising under jurisdiction? That's not arising under jurisdiction. Would you like me to go on to the related to? Well, I mean, I think that's probably indicated at the outset that I think that for me, at least, I think related to may be the doctrine that I'm not sure, but it may get them to where they want to be, at least in terms of being in bankruptcy court. All right. Well, let's talk about related to jurisdiction. And we also are very, very sure that there's no related to jurisdiction in this case. The tax effects on the partners is not the test of post-confirmation jurisdiction. The test for post-confirmation jurisdiction in this circuit is the close nexus test, which requires that the outcome of the post-confirmation proceeding, the outcome of the tax dispute, have an impact on the debtor or the plan. The critical impact component is missing here because the plan has been fully consummated. The case is long ago closed. The bankruptcy case is long ago closed. And the outcome of the tax dispute with the partners has no effect whatsoever on the debtor or the plan. Here the outcome only affects the Wilshire partners. So then what I understand, so what the Franchise Tax Board is saying is that despite the claim of the partners that under the plan, as a result of the plan, the debt was canceled, the Franchise Tax Board says, oh, no, no, no, no, no, no. It wasn't canceled. This is just nothing more than a sale, and they should be taxed for capital gains on that sale. So I don't, it seems to me that there is a, it is connected. There's no rule of law here that says plan interpretation gives rise to post-confirmation. I'm not saying that. It's the nexus. It's kind of all related to the plan. Well, the state court can determine, the state court can determine the preclusive effects, if any, of the plan relative to the tax issues in state court. That is what the In Re case talks about. It's like the state contract action in the case of In Re Re, the Ninth Circuit case of In Re Re, where the court noted that courts can review other courts' orders all the time, which in this case would be the plan, and determine its preclusive effects, if any, on the state tax dispute in the state court form. But In Re Re didn't refer to any bankruptcy confirmation order. It was purely separated out. This is distinguishable, is it not? Absolutely not. The sale order in the Re case was an order of the bankruptcy court with respect to its approval of the sale of that piece of property that had the rights of first refusal. It was a final order adjudicating certain rights of the people who were concerned about it in the post-confirmation proceeding. Here, too, the plan may or may not have some preclusive effects with respect to the tax dispute in state court, and the state court can look to the plan and see if it has any implications with respect to the state tax dispute. So there might not apply. Whether collateral estoppel applies, is that the only? I'm sorry, I didn't hear you. Whether collateral estoppel would apply with respect to the bankruptcy court saying it was not a sale, because the Bankruptcy Appellate Panel dealt only with jurisdiction. We are not, again, looking at issues of collateral estoppel or res judicata. We are looking at the jurisdictional rules, whether or not the bankruptcy court had jurisdiction to determine the tax dispute of non-debtors outside of the bankruptcy court, outside of the you know, what the debtors are, what the partners are trying to do is to obtain the benefits of bankruptcy court of, to obtain the benefits of bankruptcy without themselves being in bankruptcy. But they were intimately part of the whole bankruptcy proceeding, correct? There's evidence of that. They made up the partnership. But they, the form that they chose as partners versus the partnership is we have to respect the form that they chose. And the partnership was the one that was in bankruptcy, and the partners were not. The partners are non-debtors. But we know that, we know that, as my understanding, that under California Law, just as counsel was arguing, is that the partnership is a pass-through. Everything goes to the partners, correct? Again, you're looking at tax law, not jurisdictional law. Is that right or not? Well, again, 346 does not apply to non-debtors. So if you're going to view it like that, which is, I understand, because it's a mind teaser a little bit. Thank you. But it can get complex if you get caught up in that. But if you remember that what they're trying to say is that a rising under jurisdiction comes under Section 346, Section 346 does not apply to non-debtors. So the analysis that you're going to be making. You may be right. I mean, I'm not arguing with you about a rising under jurisdiction. That's not, that's not, you may be right. I may agree with you on a rising under jurisdiction. But we still have to deal with what's related to and the close nexus test. Right. And what I, there's no. Now, I think you're probably correct. I mean, they probably, these partners probably could have just continued on with the franchise tax board. It had been going on for five years. Right. It had been going on. They could have continued on with that and played it out to the end to see how it came out and then go on into superior court and go up to the court of appeal and make their argument. And the state court could interpret it. But I don't know that that's, that they're limited solely to that process. Well, there, that, the Supreme Court has said that that process is a plain efficient remedy. And it's adequate for a taxpayer to utilize those. So, but they come over and they want to come back to the court that approved the plan and to ask, and to ask the court to essentially clarify whether this was a sale or a cancellation. As I understood this whole plan, it was to cancel the debt. That would seem to be the whole thing. No, the only evidence we have is that it was, the bankruptcy was to prevent the foreclosure. There's no evidence. In fact, the disclosure statement and the plan, neither one of them had any information with respect to state tax consequences. The disclosure statement expressly instructed, as you mentioned earlier, instructed the partners to get tax advice if they had any concern about the tax consequences. It made the disclaimer that the plan proponents were not making any representations regarding tax consequences. It advised that the debtor was not seeking a ruling from the IRS regarding tax consequences. And it made absolutely no representations regarding the state tax consequences. In fact, it advised the partners if they had any specific issues with state tax consequences that they should consult independent tax advisors. So there's nothing in the plan that even addresses state tax consequences. So, you know, the fact that the appellants are complaining that the board is seeking to interfere with the plan by unwinding the tax effects of the plan is just not true. It's not only irrelevant, but the board is not seeking to undo the plan, revoke the confirmation order, or to affect any part of the reorganization of the debtor. So there's simply nothing here that the board is doing to attack the plan. Would you agree, though, with counsel that as a result, that at some point the partnership may have to ultimately refile? What was it called, a K? K-1. K-1? Or something, or is that it? Yes. We're talking about 1997-98. It has nothing to do with the partnership's return. It has to do with the partnership was not audited. It was examined. And the liability. Let me ask you a personal question. What rights remain with the partnership under the plan? The partnership, the original partnership no longer exists. It's gone. Right. We have an LLC, a reorganized debtor, a successor to the debtor. And I'm sorry, what was your question? And as a result of any tax proceedings before the Franchise Tax Board, would the partnership, the old partnership have to go back and take any action as a result of whatever happens before the Franchise Tax Board? I actually don't know, Your Honor. With all due respect, I have no idea what that would have to do with whether the bankruptcy court had jurisdiction over the tax dispute. If they have to file something, they have to file something. Judge Nelson was alluding to it may well have some impact on the partnership. The partnership is not a taxable entity, so it won't make a bit of difference what they said then or what they say now. Doesn't some governmental entity keep track of their assets and income and whatnot, of the partnership's assets and income? It may not be a taxable entity. We're only concerned today with respect to the partner's liability. The tax was not assessed against the partnership. Partnerships are not taxable entities. So there is no effect on the debtor under tax law or jurisdictionally. And the appellants have not pointed to one thing, and they certainly didn't point out anything like you just suggested. And I'm sure if it was true, they would have said that, but they didn't say that. Let me ask just one question. If we – and I'm not sure how I came out. I think this is an interesting case. It is. I'm not sure. I have to think a lot more about this case. But if we were to conclude that the BAP erred on its jurisdictional determination, what do we do? Send it back to the BAP? I hope that's not the Court's determination. But if it is, that's what we believe is the proper procedure here, because the BAP — Excuse me. I didn't hear what. What would we do? Yes. We would submit that if this Court found it necessary to reverse the Bankruptcy Appellate Panel, that it should go back to the Bankruptcy Appellate Panel to determine the numerous other objections the Board had with respect to the bankruptcy court's orders and opinion. Thank you. So, with respect to the partners' individual rights, the rights of the partners are not identical to the debtors' for purposes of post-confirmation jurisdiction because Section 346 doesn't even apply to the non-debtor partners. So there's no matching right to relief. Only the debtor has a right to relief under 346, and the debtor doesn't even exist anymore. And the partners do not have any individual federal rights to go, as non-debtors, to go into the bankruptcy court and reopen the bankruptcy court's case 10 years after to find out what their tax liability is that can be adjudicated and has been going on in state court. So there's It's not in the state court, is it? I thought it was before the franchise case. It's in the administrative proceedings, which we bundle as the state court tax system, the state court procedures. And they're in the administrative part right now. And then later, if they wanted to continue on, they could go make a claim for refund and go to the state court, the actual state court. Is there any reason it's gone on for four years or four or five years? Well, I believe it's been very contentious. And it wasn't until it didn't look good for the partners that they someone came up with the idea to go back to the bankruptcy court and see if they could get relief there. I mean, they seriously, I mean, their position is, it seems pretty clear that this was a cancellation of debt, not a disguised sale as the franchise tax board. No, not every cancellation of debt is cancellation of indebtedness income. The question is whether or not there was a cancellation of debt in connection with a disposition of real property. And that is the question that is being examined in the state court. And again, the analysis of that transaction is not the thing that gives rise to bankruptcy court jurisdiction. The rules of bankruptcy of jurisdiction govern the question that we have before the court, which is whether this case arises under, arises in, or is related to Title 11. That's where we have to keep focused. And I realize that in reading the cases, sometimes we get off track because we're not thinking about this is a jurisdictional question, not a question of answering the underlying issues with respect to whether it was a sale or not. All right. I think I'll let you go over the time just a minute, so thank you. I'm over the time? You're over time. Oh. A minute and 23 seconds. Oh, thank you. Unless Judge Nelson or Judge Kahn has a question for you. Any more questions? I have none. Okay. No, that's okay. Thank you. Thank you. You have about five and a half minutes of rebuttal. Thank you, Judge Pius. On page 27 of Appley's Supplemental Excerpts of Record, in paragraph 9 of the Declaration of Ronald Babcock, a California Franchise Tax Board employee, it says, on or about November 15, 2002, an FTB auditor issued a report concluding that debtors reported cancellation of debt income was capital gain due to a sale or exchange. Ms. Holcomb has argued very ably and in complete good faith, but she has mistaken in her suggestion that there was not an audit of the debtor, Wilshire Courtyard. Wilshire Courtyard most definitely was audited by the California Franchise Tax Board. Now, let's think about law firm bankruptcies for a moment. There's one pending in the Southern District of New York, Dewey and LaBeouf. It's generating a lot of headlines, but I don't want to focus on that particular case. Let's just think about law firm bankruptcies in general. It is the law firm that has failed. It is the law firm that is illiquid. It's not the individual partners who are bankrupt. It's not the individual partners who are debtors. But everything that happens in that bankruptcy case has a crucial impact on the lives and economic fortunes of those partners, even though it is the partnership that is in bankruptcy. If the things you've heard from Ms. Holcomb today are right, the fact that the partners in the law firm are not debtors means that they really can't invoke the jurisdiction of the bankruptcy court because their partnership is in bankruptcy and they aren't. That cannot be right, and it's not what the case has said. Well, they could participate in the bankruptcy, couldn't they? Right, but Ms. Holcomb places great emphasis on the fact that 346J1 uses the word debtors. She says the partners are non-debtors. QED, they may not invoke the jurisdiction of the bankruptcy court. That's not what the relevant statutes say. 1334B is broad, as the Sasson case says. It includes the words related to. Section 1109B of the bankruptcy code allows any party in interest, not just debtors, any party in interest to bring up any issue, and that's what the Thorpe insulation case confirms, is that it's not just the debtors who can bring up the debtors' rights. Any issue may be brought up by any interested party. Who could be more interested in the taxation of a partnership or, again, taxes? They're not taxed. They're passed through entities. Who could be more interested in the nominal tax liability of a partnership than its partners? If ever there is a case for allowing non-debtors to invoke the jurisdiction of the bankruptcy court, which, by the way, happens all the time, this is that case, and so is any other partnership bankruptcy. Now, the bankruptcy clause of the Constitution empowers Congress to make any law on the subject of bankruptcies. And at 546 U.S. at 370, the Supreme Court of the United States says its coverage encompasses the entire subject of bankruptcies. So the distinction Ms. Holcomb wants to draw for constitutional purposes between non-debtors invoking the bankruptcy power against a state entity that might otherwise have Eleventh Amendment immunity and debtors invoking that power also doesn't hold up in the face of explicit language in the Constitution of the United States and an opinion of the Supreme Court of the United States. Let's talk about the Wray case and the close nexus test. Wray is a contract action. It's a breach of contract action. It's not an action to enforce a preemptive provision of the bankruptcy code to stop a state entity that is trying to violate the bankruptcy code. It's a contract action. That case can be entirely correct and have nothing to do with this case. Let's talk about American principles. That is a case involving a pre-petition tax liability, and the debtor tried to use Section 505 of the bankruptcy code to say, I get to litigate my pre-petition tax liability, which has nothing to do with bankruptcy, in the bankruptcy court instead of the state court. This court said, no, that goes too far. That reads the expansive language of Section 505 to go too far. That's very different from enforcing Section 346, which is all about state taxes. It's about many things, but under A, it has preemptive force, and it's all about state taxes. This is not American principles. I would like to go back, though, to the statement in the plan. The parties were to check with their tax advisors as to tax consequences. What do you make of that? Here's what I make of that, Judge Nelson. Let me be extremely candid. Nobody thought of Section 346 when this plan was put together, but we know from the Antonelli decision of the Fourth Circuit that Section 346 is self-executing and is considered to be incorporated in every bankruptcy, every plan of reorganization, whether the parties think about it or not. So you'll see in the plan itself, and you'll see, to be honest, some other documents in the record, reflecting that the parties hadn't yet thought about Section 346, but that doesn't mean that Section 346 wasn't part of the plan. Indeed, if this court were to hold that Section 346 were not part of the plan, it would create a direct circuit conflict with the United States Court of Appeals for the Fourth Circuit, which would be unfortunate. And we have no Ninth Circuit case saying that. Is that true? That's correct, Your Honor. That's correct. But I do submit that the Antonelli court was correct in saying that 346 is self-executing. And the language of the statute, which both Ms. Holcomb and I agree you ought to read very carefully, says this section applies notwithstanding any state or local law imposing a tax. And it says income is not realized by the estate, the debtor, or successor there by reason of forgiveness or discharge of indebtedness in a case under this title. The phrase cancellation of indebtedness has been thrown around. It's a very unfortunate phrase, if I may just finish this thought, Your Honor. It's an unfortunate phrase to use in this case. I would really recommend that the court follow the statutory language, forgiveness or discharge of indebtedness, which lines up beautifully with the plan. Cancellation of indebtedness is a term from the Internal Revenue Code, and it sows confusion. Just one last question. You had asked, Judge Nelson earlier asked you about the impact on the debtor. What is the impact? I'd like to, if I may, to go back to my Dewey and Leboeuf example or my law firm bankruptcy example. Every time a law firm goes into bankruptcy and there's a fight over its tax liabilities to California, New York, or any other state, in normal parlance, there's a huge impact on the entity. The real impact is felt by the partners in the entity. That's how partnership taxation works. But in normal parlance, there's an impact on the entity. And again, getting back, if I may, just briefly to the Sprint v. APCC case, that is the question that was before the Supreme Court in Sprint v. They say in some sense there's no impact on what was in that case an aggregator of payphone service providers because they're passing through 100 percent of the litigation proceeds to their constituents. Does that defeat Article III's standing? The Supreme Court answered that question. It does not defeat Article III's standing. Thank you. Thank you for your arguments on both sides. The panel appreciates the arguments. It's an interesting case. It's a difficult case. Well, it'll be submitted at this time. Thank you.
judges: Conlon, Nelson, Paez